UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-cr-00073-JAW |
| | ) | |
| DANNY RYDLE | ) | |

**ORDER ON PROFFER AGREEMENT**

The Court declines to rule on whether the terms of a proffer agreement should have been disclosed by the parties during a Federal Rule of Criminal Procedure 11 hearing because the Court determines that the information potentially protected by the proffer agreement was independently revealed to the United States Probation Officer during a presentence investigation and the Court may consider the contents of the presentence investigation report without regard to whether the terms of the proffer agreement would prohibit it.

**I.   BACKGROUND**

On May 3, 2019, Danny Rydle waived indictment and pleaded guilty to an information, alleging that he engaged in a conspiracy to commit theft from a licensed firearms dealer and that he committed a theft from a licensed firearms dealer. *Information* (ECF No. 1).[1] *Waiver of Indictment* (ECF No. 24); *Min. Entry* (ECF No. 25).  The United States (Government) and Mr. Rydle did not enter into a plea

---

[1]   The docket for this case is unusual in that it restarted docket numbering when the information was filed for five entries only.  Thus, the first set of docket numbers starts with the filing of the criminal complaint and continues from docket number one through docket number twenty-one and the second restarts at docket number one with the filing of the information, continues from docket number one through five, and then continues from twenty-two thereafter.  The Court has specified when it is citing the criminal complaint series of numbers.  If there is no reference to the criminal complaint in the citation, the Court is referring to the sequential numbers that start with the filing of the information.

1

agreement for purposes of the Federal Rule of Criminal Procedure 11 hearing. *Tr. of Proceedings* at 17:22-18:15 (ECF No. 31). On August 2, 2019, the United States Probation Office (PO) issued a Second Revised Presentence Investigation Report (PSR), PSR at 1, and on August 21, 2019, the Court held a presentence conference of counsel. *Min. Entry* (ECF No. 30). On September 6, 2019, the Court held a continued presentence conference. *Min. Entry* (ECF No. 36).

The PO made its offense level computation by starting with the base offense level of 14, adding two levels for possession of between three and seven firearms for a subtotal of 16, adding two more levels because Mr. Rydle stole the firearms for a subtotal of 18, and adding four more levels because Mr. Rydle possessed the firearms in connection with another felony offense for an adjusted offense level of 22. PSR ¶¶ 13-16. The PO applied acceptance of responsibility and reduced Mr. Rydle's adjusted offense level three levels for a total offense level of 19. *Id.* ¶¶ 22-24. Under the PSR, Mr. Rydle's criminal history category is Category III, resulting in a guideline sentence range of thirty-seven to forty-six months. *Id.* ¶¶ 32, 50.

The base offense level of 14 is significant because the PO found that, as he was an unlawful user of or addicted to a controlled substance, namely cocaine base, Mr. Rydle was "a prohibited person at the time [he] committed the instant offense" under United States Sentencing Guideline (U.S.S.G.) § 2K2.1(a)(6). *See* 18 U.S.C. § 922(g)(3) ("It shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . to . . . possess in or affecting commerce, any firearm").

Mr. Rydle objected to the base offense level of 14 on the ground that the information about his use of or addiction to crack cocaine came from a proffer session with the Government and the Government and Mr. Rydle had entered into a written proffer agreement that prohibits the use of any information Mr. Rydle disclosed during his proffer for sentencing purposes. Addendum to PSR at 1 (Objection # 1). The PO responded that it did not use the information Mr. Rydle disclosed during the proffer session to arrive at its conclusion. *Id.*

The Court discussed this objection with counsel at the presentence conference on August 21, 2019. *Tr. of Proceedings* at 2:1-14:22 (ECF No. 33). One issue was whether, given the fact Mr. Rydle was now saying that he had an enforceable agreement with the Government that affected sentencing, this agreement should have been disclosed to the Court during the Rule 11 hearing. *Id.* at 6:17-8:6. The Court discussed this issue further at the continued presentence conference on September 6, 2019, and the parties agreed to file memoranda on this narrow issue. *Min. Entry* (ECF No. 36). On October 1, 2019, the Government filed its memorandum as well as a copy of the proffer agreement. *Gov't's Mem.* (ECF No. 42); *id.*, Attach. 1, *Proffer Agreement* (*Proffer Agreement*). On October 15, 2019, Mr. Rydle responded. *Def.'s Resp. to the Gov't's Mot. to Seal* (ECF No. 45) (*Def.'s Resp.*).

## II. THE PROFFER AGREEMENT

On or around March 14, 2019, after the Government filed a criminal complaint against Mr. Rydle on January 16, 2019, *Criminal Compl.* (ECF No. 1), but before he waived indictment and pleaded guilty to the two-count information on May 3, 2019,

*Waiver of Indictment*; *Min. Entry* (ECF No. 25), the Government and Mr. Rydle entered into a Proffer Agreement. *Proffer Agreement* at 1. The Proffer Agreement provided in part:

> In any prosecution brought against Client by this Office . . ., the Government will not offer in evidence in its case-in-chief, <u>or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence</u>, any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting. The parties understand, however, that in the event of a prosecution of Client, the Government will provide to the Court the information which Client provides pursuant to this Agreement. The parties understand that, while the Government will not introduce Client's statements in evidence except as permitted in this agreement, the Government cannot bind the Court as to its appropriate use of such information and that the Court will use such information to the extent permitted by law.

*Proffer Agreement* ¶ 2 (emphasis supplied).

At the May 3, 2019, Rule 11 hearing, the Court expressly asked counsel and Mr. Rydle whether the Government had made any formal plea offers to Mr. Rydle and the Government, defense counsel, and Mr. Rydle confirmed that there had been no formal plea offers. *Tr. of Proceedings* at 17:22-18:15 (ECF No. 31). Mr. Rydle assured the Court that no one had made any promises to him in an effort to get him to plead guilty and no one had made any promise as to what the prosecutor's recommendation was going to be at the sentencing hearing. *Id.* at 20:15-21.

Following Mr. Rydle's proffer, the Government decided not to make a motion under U.S.S.G. § 5K1.1 for a downward departure for Mr. Rydle based on his cooperation. Despite the Government's decision, at the first presentence conference, the Court discussed the possibility that Mr. Rydle might argue for a lower sentence

4

pursuant to *United States v. Landrón-Class*, 696 F.3d 62 (1st Cir. 2012), as part of the Court's evaluation of the statutory sentencing factors in 18 U.S.C. § 3553(a). *Tr. of Proceedings* 11:23-12:12 (ECF No. 33).

### III.   THE PARTIES' POSITIONS

#### A.   The Government's Memorandum

In its memorandum, the Government first points out the value of proffer agreements to the Government in its investigation and prosecution of criminal cases. *Gov't's Mem.* at 1. The Government says that an effective proffer agreement must accomplish four things: (1) provide sufficient immunity to a potential witness so that the witness will feel free to fully disclose his criminal conduct, (2) not so blanket a potential witness that he may later lie at trial with impunity, (3) avoid a so-called *Kastigar*,[2] and (4) address the consequences of breach and the rules for disclosure of the information generated at the proffer. *Id.* at 2. Next, the Government cites caselaw holding that proffer agreements are legal agreements between two parties that are interpreted using contract principles, especially the rubric that terms must be read to give effect to the parties' intent. *Id.* at 3-4.

The Government acknowledges that proffer agreements vary among United States Attorney Offices across the Country and states that its version of the proffer agreement "take[s] a broader approach," which allows the Government to use a defendant's proffer statements where a defendant offers evidence contrary to the proffer. *Id.* at 4. Also, the Government says that its version of the proffer agreement

---

[2]   *Kastigar v. United States*, 406 U.S. 441, 441 (1972).

"makes explicit that the Court would eventually receive the proffered information in the event of a defendant's prosecution." *Id*. at 5.

Next, quoting Federal Rule of Criminal Procedure 11(b)(2), the Government admits that this provision requires a court to address the defendant and determine "that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." *Id*. at 6 (quoting FED. R. CRIM. P. 11(b)(2)). But the Government argues that Rule 11(b)(2) "only references those other promises in the context of the defendant's guilty plea flowing from them." *Id*. In other words, according to the Government, "if there were promises made to the defendant outside the context of a plea agreement, and if the defendant's guilty plea did not 'result from' those other promises, those other promises cannot be said to be relevant to the issue of whether the guilty plea was voluntary." *Id*.

The Government distinguishes its proffer agreements from its plea agreements and cooperation agreements, describing an "expansive gulf" between proffer agreements and "potential federal charges at some future date . . .." *Id*. At the same time, the Government pronounces that despite "an aggressive and expansive archeological dig, government counsel has unearthed no federal decisions interpreting Rule 11(b)(2) to require the disclosure of Proffer Agreements to ensure a voluntary guilty plea."[3] *Id*. at 7. The Government contends that a "plain reading of

---

[3] Presumably, the obverse is also true: that the Government unearthed no federal case that prohibited such disclosure. In other words, despite its "expansive archeological dig," the Government found no relevant case on the issue.

6

the text" demonstrates that "only those promises relevant to [the] Court's inquiry into the area of voluntariness are those promises tied to the guilty plea." *Id.* at 8.

### B.    Danny Rydle's Response

Mr. Rydle agrees with the Government. *Def.'s Resp.* at 1. Mr. Rydle states that "there is no obligation to disclose any promise in a proffer agreement like the one in this case because it does not affect a decision made on the elements of the crime, nor was the promise not to use such information material to Mr. Rydle's decision to plead guilty." *Id.* Mr. Rydle contends that the proper analysis is to look at the law concerning ineffective assistance of counsel during plea negotiations. *Id.* He argues that because the proffer agreement did not induce his decision to plead guilty, it was not necessary to reveal the agreement to the Court. *Id.* at 2. Mr. Rydle points out that the proffer agreement in this case does not protect him from information that the Government already knew and that the prosecution version in this case did not refer to any facts protected by the proffer agreement, including his status regarding use of or addiction to drugs. *Id.* Mr. Rydle's defense counsel acknowledges that he "may have been wrong as to Mr. Rydle's prohibited status and how that would affect his sentence," but he argues that his error is "detached from the Rule 11 process in this case." *Id.* at 4.

### IV.   DISCUSSION

The Court declines to resolve the issue the parties presented because it is not required to do so in the circumstances of this case and the Court may not issue advisory rulings. *See Paraskevopoulos v. Cent. Me. Med. Ctr.*, No. 2:17-cv-00166-

JAW, 2019 U.S. Dist. LEXIS 164285, at *17-18 (D. Me. Sept. 25, 2019) ("[T]he Court remains constrained against issuing advisory opinions under Article III of the United States Constitution, which limits the Court's jurisdiction to real 'cases' or 'controversies'" (citing U.S. CONST., art. III, § 2)); *see also Barr v. Matteo*, 355 U.S. 171, 172 (1957) ("[A]n advisory opinion cannot be extracted from a federal court by agreement of the parties").

During the proffer session, Mr. Rydle apparently revealed that he was a user of or addicted to crack cocaine.[4] After he pleaded guilty, the PO interviewed Mr. Rydle to prepare a PSR and, consistent with its routine presentence investigation, the PO asked him about his history of substance abuse. Mr. Rydle freely acknowledged that between 2016 and his arrest in this case, he used crack cocaine at a rate of "three eight balls per day." PSR ¶ 44. He also openly discussed his use of other illegal drugs, including heroin, during the period leading up to and after the February 20, 2018, burglary that resulted in these federal charges. *Id.*; *Criminal Compl.* at 1-3. Thus, Mr. Rydle separately and independently while represented by counsel revealed to the PO the facts that underlie the PO's determination that his base offense level should be fixed at 14, not 12.

The terms of the proffer agreement prevent the Government from introducing evidence that Mr. Rydle revealed at the proffer session, but the Government is not introducing that evidence. Mr. Rydle volunteered this evidence to the PO and the

---

[4] The Court says "apparently" because the parties have not supplied the Court with the contents of Mr. Rydle's March 2019 proffer. The Court accepts defense counsel's representation that during the proffer session, Mr. Rydle discussed his illegal drug use.

8

PO, not the prosecutor, included it in the PSR. Accordingly, there is nothing in this record for the Court to find that the proffer agreement has been breached.

Nor is there any evidence that Mr. Rydle disputes the accuracy of the contents of the PSR, only whether the Court may legally use this information for purposes of his guideline calculation. *See United States v. Hercules*, 947 F.3d 3, 5 (1st Cir. 2020) (stating that a court may consider the "undisputed portions of the presentence investigation report" for sentencing purposes). Furthermore, under First Circuit law, "[t]he defendant bears the burden of disputing the PSR's factual findings, and absent an objection []supported by countervailing proof, the district court usually may accept the findings in the PSR without further inquiry." *United States v. Gonzalez-Arias*, 946 F.3d 17, 41 (1st Cir. 2019) (quoting *United States v. González*, 857 F.3d 46, 61-62 (1st Cir. 2017) (quoting *United States v. Occhiuto*, 784 F.3d 862, 868 (1st Cir. 2015))).

The issue would be different if the Government sought to use evidence of Mr. Rydle's drug use to enhance his sentence and the only evidence of that use came from the contents of a proffer session that the Government promised not to use. Whether in those circumstances the Government and counsel should have revealed the Government's promise to the Court during the Rule 11 hearing is not before the Court.

## V.   CONCLUSION

The Court declines to rule on whether the Government's promise not to use information garnered in a proffer session for purposes of sentencing should have been disclosed during the Rule 11 hearing because to do so would constitute an advisory

9

opinion, not necessary to resolve the issues before the Court. Now that this matter is resolved, the Court ORDERS the setting of this case for a telephone conference with counsel regarding sentencing.[5]

    SO ORDERED.

                            /s/ John A. Woodcock, Jr.
                            JOHN A. WOODCOCK, JR.
                            UNITED STATES DISTRICT JUDGE

Dated this 1st day of April, 2020

---

[5] This Order shall be sealed until Mr. Rydle is released from incarceration.