UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-00073-JAW |
| | ) | |
| DANNY RYDLE | ) | |

**ORDER ON SENTENCING ISSUES**

A defendant asserts that three deferred dispositions should not be allocated criminal history points for the purpose of calculating his guideline sentence range under the United States Sentencing Guidelines (U.S.S.G.) because in his view the Court should view them as expungements. Finding that under Maine law, the defendant admitted guilt to be eligible for deferred dispositions, the Court concludes that the three contested deferred dispositions are not expungements under the U.S.S.G. and are instead diversionary dispositions eligible for the allocation of points to determine the defendant's criminal history category.[1]

I.   **GENERAL BACKGROUND**

On May 3, 2019, Danny Rydle waived indictment for a count of Conspiracy to Commit Theft from a Licensed Firearm Dealer in violation of 18 U.S.C. §§ 371 and 922(u) and a count of Theft from a Licensed Firearm Dealer and Aiding and Abetting in violation of 18 U.S.C. §§ 2 and 922(u). *Waiver of Indictment* (ECF No 24); *Min. Entry* (ECF No. 25); *Criminal Compl.* (ECF No. 1). Mr. Rydle entered a plea of guilty

---

[1]      Regarding terminology, the Maine statute, 17-A M.R.S. § 1903(1), refers to "deferred disposition"; U.S.S.G. § 4A1.2(f) uses the term "diversionary disposition." In general, when referring to Maine law, the Court has used deferred disposition and when referring to the U.S.S.G., the Court has used diversionary disposition.

on both counts on the same day. *Min. Entry* (ECF No. 25). The Court held a presence conference on September 6, 2019. *Min. Entry* (ECF No. 36). On April 3, 2020, the Could held a continued presence conference. *Min. Entry* (ECF No. 52).

On April 13, 2020, Mr. Rydle filed his sentencing memorandum. *Sentencing Mem.* (ECF No. 55) (*Def.'s Mem.*). Mr. Rydle filed a motion to delay sentencing due to the COVID-19 pandemic on April 17, 2020. *Letter from Att'y Andrews to Judge Woodcock* (ECF No. 56). On April 20, 2020, the Court granted the motion to delay and scheduled a conference of counsel for July 22, 2020. *Order Granting Without Obj. Mot. to Delay Sentencing During Acute Phase of COVID-19* (ECF No. 57); *Notice of Hr'g* (ECF No. 58). The United States (Government) filed its responsive sentencing memorandum on April 21, 2020. *Gov't's Sentencing Mem.* (ECF No. 61) (*Gov't's Mem.*). On July 3, 2020, the Court ordered the Government to file a corrected set of docket records for the deferred dispositions at issue. *Order on Underlying Docs.* (ECF No. 62). The Government complied on July 9, 2020. *Notice* (ECF No. 63); *id.*, Attachs. 1-3.

## II.   THE CONTESTED CONVICTIONS

In its Second Revised Presence Report (PSR), the United States Probation Office (PO) allocated three criminal history points to three deferred disposition cases. The first point is for a state theft charge the court dismissed after a period of deferment; *2nd Revised Presence Investigation Report* ¶ 27 (*PSR*), the second for a state domestic violence assault charge in which the court entered a deferred

disposition, *id.* ¶ 28, and the third for a state unlawful possession of scheduled drug charge the court dismissed after a period of deferment. *Id.* ¶ 29.

## III.   PARTIES' POSITIONS

### A.   Danny Rydle's Sentencing Memorandum

Mr. Rydle contests three of the six criminal history points the PO allocated in the PSR. *Def.'s Mem.* at 1.  Mr. Rydle argues that the dismissal of a charge after a period of deferment is akin to an expungement of the conviction which under U.S.S.G. § 4A1.2(j) cannot be attributed criminal history points. *Def.'s Mem.* at 1-4 (quoting U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(j) (U.S. SENTENCING COMM'N 2018)).

Mr. Rydle argues the first charge should not be allocated criminal history points because disorderly conduct, the second count which Mr. Rydle also pleaded guilty to, is one of the enumerated offenses contained in U.S.S.G. § 4A1.2, and so a sentence of confinement for longer than thirty days or a sentence of probation for longer than a year is required to attribute a criminal history point to that charge. *Id.* at 1-2.  Therefore, Mr. Rydle asserts, "[w]ithout addressing the deferred disposition on the theft charge, this paragraph cannot be counted because the only actual conviction is for disorderly conduct, which resulted in a fine as a sentence." *Id.* at 2.

Mr. Rydle next contends that, for all three deferred disposition charges, dismissal after a period of deferment should not be treated as a diversionary disposition with a finding of guilt, which would be allocated criminal history points under U.S.S.G. § 4A1.2(f). *Id.* at 2-3.  Rather, Mr. Rydle states, the dismissed charges in Mr. Rydle's case are expungements. *Id.* at 3.

3

Mr. Rydle concedes that diversionary dispositions can be allocated criminal history points. *Id.* at 3-4. However, Mr. Rydle argues the admission of guilt required for the diversionary disposition to be allocated points is negated by "the procedure where the plea is withdrawn and the charge dismissed . . .." *Id.* at 4. Mr. Rydle points to application note ten to U.S.S.G. § 4A1.2, which states that expungement is limited to instances where a charge is dismissed for reasons of "innocence or errors of law . . .." *Id.* (quoting U.S. SENTENCING GUIDELINES MANUAL § 4A1.2 cmt. n.10 (U.S. SENTENCING COMM'N 2018)). Mr. Rydle says it is thus necessary to look to the legislative intent behind the Maine deferred disposition statute to determine whether Mr. Rydle's deferred dispositions were due to innocence or errors of law. *Id.* Mr. Rydle asserts that the deferred dispositions within Maine Revised Statutes, title 17-A, section 1903 should be interpreted as expungements because the statute directs the court to dismiss the charging instrument with prejudice if the court allows the defendant to withdraw his or her plea. *Id.* He says that "[t]he act of withdrawing the plea and dismissing the charging instrument is something more than setting aside the conviction or allowing it to stand on the record." *Id.*

Mr. Rydle argues that the Court should focus solely on "why the plea was withdrawn and the charging instrument dismissed . . .." *Id.* at 5. He cites First Circuit caselaw and asserts that the holding in *Mateo v. United States*, 398 F.3d 126 (1st Cir. 2005)—which involved vacated convictions—indicates the dismissals should be treated as expungements here. *Id.* at 5-6.

### B.      The Government's Sentencing Memorandum

The Government argues that the three deferred dispositions disputed by Mr. Rydle are diversionary dispositions and should be allocated criminal history points because the dismissal after a period of deferment occurred after an admission of guilt. *Gov't's Mem.* at 4.   The Government looks at the language of U.S.S.G. § 4A1.1(c), which states that each prior sentence not counted in U.S.S.G. § 4A1.1(a) or (b) should be allocated one point, "up to a total of 4 points for this subsection." *Id.* at 2 (quoting U.S. Sentencing Guidelines Manual § 4A1.1(c) (U.S. Sentencing Comm'n 2018)). The Government argues this subsection applies to the three charges Mr. Rydle disputes as they constitute prior sentences and are not counted in U.S.S.G. § 4A1.1(a) or (b).   *Id.* at 2-3.   The Government further views the three prior charges as diversionary dispositions within the meaning of U.S.S.G. § 4A1.2(f) because they "came about after a finding of guilt had been entered . . .." *Id.*

The Government opposes Mr. Rydle's argument that the disputed charges are expungements, stating the docket record itself reflects the charges were dismissed as diversionary dispositions, not expungements.  *Id.* at 3.  The Government argues that even if designated as expungements by Maine state law, the charges should not be considered expungements within the U.S.S.G. because in this context expungements are not counted for criminal history points only if they result from convictions that have been vacated or reversed due to innocence or errors of law or have been ruled constitutionally invalid.  *Id.*   The Government discusses cases in other circuits that it says support this proposition. *Id.* at 3-4 (quoting *United States v. Stubblefield*, 265

F.3d 345, 347 (6th Cir. 2001); *United States v. Hayden*, 255 F.3d 768, 770-74 (9th Cir. 2001); *United States v. Hines*, 133 F.3d 1360, 1362-66 (10th Cir. 1998)).   The Government asserts that since it is "irrefutably clear" that Mr. Rydle's charges were not dismissed due to innocence, errors of law, or constitutional validity, the three criminal history points should remain.  *Id.* at 4.

## IV.   UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 4A1.1(a) requires three points to be added "for each prior sentence of imprisonment exceeding one year and one month."  U.S. Sentencing Guidelines Manual § 4A1.1(a) (U.S. Sentencing Comm'n 2018).   Section 4A1.1(b) "[a]dds 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)."  *Id.* § 4A1.1(b).   Section 4A1.1(c) "[a]dd[s] 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection."  *Id.* § 4A1.1(c).

Section 4A1.2(f) states that "[a] diversionary disposition resulting from a finding or admission of guilt . . . in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered . . .."  *Id.* § 4A1.2(f). Section 4A1.2(j) states that "[s]entences for expunged convictions are not counted . . .."  *Id.* § 4A1.2(j).

Application notes six, nine, and ten to U.S.S.G. § 4A1.2 clarify when vacated convictions, diversionary dispositions, and set aside convictions are to be allocated criminal history points.  Note six states that "[s]entences resulting from convictions that . . . have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or . . . have been ruled

constitutionally invalid in a prior case are not to be counted." *Id.* § 4A1.2 cmt. n.6. Note nine explains that adult diversionary dispositions are counted under § 4A1.2(j) "if they involved a judicial determination of guilt or an admission of guilt in open court." *Id.* § 4A1.2 cmt. n.9. The note goes on to describe the U.S.S.G. policy to not extend leniency to "defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes . . .." *Id.* Note ten describes that convictions set aside "for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction," are counted. *Id.* § 4A1.2 cmt. n.10. "However, expunged convictions are not counted." *Id.*

## V.   DISCUSSION

The Court approaches this issue in two ways: first, it assesses whether any of the three deferred dispositions qualify as expungements under U.S.S.G. § 4A1.2(j) and second, it addresses whether any count as diversionary dispositions under U.S.S.G. § 4A1.2(f).[2]

### A.   Expungements Under U.S.S.G. § 4A1.2(j)

The First Circuit interpreted expungements under U.S.S.G. § 4A1.2(j) as solely addressing charges dismissed because of innocence or errors of law. *See Mateo*, 398 F.3d at 134-35 & 134 n.8 (stating that in addition to constitutional invalidity, the sentencing guidelines "provide that sentences resulting from convictions that have

---

[2]   The Court does not reach Mr. Rydle's contention that the disorderly conduct conviction in paragraph twenty-seven of the PSR should not be counted. *See Def.'s Mot.* at 1-2 (citing U.S.S.G. § 4A1.2(c)(1)). This is because once the deferred disposition of the theft charge in Count One of paragraph twenty-seven is counted and assigned one criminal history point, the disorderly conduct conviction becomes immaterial to the calculation of his criminal history score.

been set aside 'for reasons unrelated to innocence or errors of law' *should* be counted"
(emphasis in original) (quoting U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(f)
(U.S. SENTENCING COMM'N 2018))); *United States v. Dubovsky*, 279 F.3d 5, 9-10 (1st
Cir. 2002) (noting that the federal sentencing guidelines have their basis in
congressional, not state, policy and holding that the state record purge did not count
as an expungement for guideline purposes because it was done to give a defendant a
fresh start, not to correct errors of law or vindicate innocence).

In *United States v. Dubovsky*, the First Circuit discussed three approaches
taken by different circuit courts on expungements and it adopted "the 'prevailing
view'" that "expungement within the meaning of the Guidelines's structure is best
determined by considering whether the conviction was set aside because of innocence
or errors of law." 279 F.3d at 8, 9 n.5 (quoting *United States v. Dubovsky*, Criminal
No. 99-37-B, 2001 U.S. Dist. LEXIS 8993, at *3-4 (D.N.H. Jan. 24, 2001)). The First
Circuit reasoned that its interpretation is justified by "the explicit language of note
ten to Guideline § 4A1.2(j) . . . ." *Id.* at 8-9. Thus, in *Dubovsky*, the defendant's prior
marijuana charge had been sealed and dismissed; however, the charge was still
allocated criminal history points because the case not been sealed or dismissed "for
reasons of innocence or errors of law, and . . . the related records were not completely
destroyed." 279 F.3d at 8, 10. The First Circuit's interpretation of § 4A1.2(f) and (j)
is shared by the Tenth, Fifth, and D.C. Circuits. *See, e.g.*, *Hines*, 133 F.3d at 1362-
66; *United States v. Ashburn*, 20 F.3d 1336, 1343 (5th Cir. 1994), *reinstated in part*

*and vacated in part by United States v. Ashburn*, 38 F.3d 803 (5th Cir. 1994) (en banc); *United States v. McDonald*, 991 F.2d 866, 871-72 (D.C. Cir. 1993).

The *Dubovsky* Court touched on the argument Mr. Rydle is making here, namely that the intent of the Maine Legislature should control this Court's application of U.S.S.G. § 4A1.2(j). The First Circuit explained that the "intent of the state legislature is relevant to show whether the sealing procedure is related to innocence or legal errors." 279 F.3d at 10 (citing *Hines*, 133 F.3d at 1364). However, "any collateral consequences of sealing under state law are irrelevant to the application of the federal Sentencing Guidelines, which have their basis in congressional, not state policy." *Id.* In *Dubovsky*, the First Circuit rejected the defendant's contention that his Massachusetts diversionary dispositions should not count in that "'[t]he obvious purpose of this sealing provision is to give a defendant a fresh start,' *Dubovsky*, 2001 [U.S. Dist. LEXIS 8993, at *6], not to correct errors of law or vindicate innocence." 279 F.3d at 10 (some alterations in original). *Dubovsky* remains the law of the circuit. *See Mateo*, 398 F.3d at 135; *Mackenzie v. United States*, Criminal Action No. 13-10149-FDS, 2017 U.S. Dist. LEXIS 189484, at *19-20 (D. Mass. Nov. 16, 2017).

The Court turns to whether deferred dispositions under Maine law are because of innocence, errors of law, or unconstitutionality or whether they reflect a state policy to give qualifying defendants a fresh start. First, to qualify for deferred disposition under Maine law, defendants must have "pled guilty." 17-A M.R.S. § 1903(1). Next, defendants must demonstrate "by a preponderance of the evidence

9

that the person has complied with the court-imposed deferment requirements . . ..”
*Id.*  The Court then formally “shall impose a sentencing alternative authorized for
the crime to which the person pled guilty and consented to in writing at the time
sentencing was deferred” unless the prosecutor, “prior to sentence imposition, moves
the court to allow the person to withdraw the plea of guilty.”  *Id.*  The statute describes
the procedure if the prosecutor files a motion to allow the withdrawal of the guilty
plea:

> Except over the objection of the person, the court shall grant the State’s
> motion.  If the court grants the State’s motion, the attorney for the State
> shall dismiss the pending charging instrument with prejudice.  If the
> court finds that the person has inexcusably failed to comply with the
> court-imposed deferment requirements, the court shall impose a
> sentencing alternative authorized for the crime to which the person pled
> guilty.

*Id.*

What is apparent from this statutory procedure is that the defendant must
acknowledge guilt by entering a plea of guilty and the later dismissal of the charge is
not based on the defendant’s innocence, errors of law, or unconstitutionality, but on
whether the defendant has complied with the “court-imposed deferment
requirements . . ..”  *Id.*  This view of the Maine deferred disposition statute is
corroborated by the Maine Supreme Judicial Court’s interpretations of the statute.
Just recently, the Maine Law Court addressed a situation where a defendant had
entered into a deferred disposition and had allegedly violated the terms of the
deferment requirements by committing new criminal conduct.  *State v. Hourdeh*, 2020
ME 69, ¶¶ 1-5.  The trial court suppressed evidence of the search that formed the

basis of the new criminal charge and the state dismissed the new charge.  *Id.* ¶ 3. Nevertheless, the state moved to terminate the defendant's deferred disposition and the question was whether evidence of the suppressed search could be admitted at the deferred disposition hearing.  *Id.* ¶¶ 7-12.

The *Hourdeh* Court affirmed the admission of evidence of the new crime at the deferred disposition hearing, reasoning that by entering his guilty plea subject to the conditions of deferred disposition, the defendant was not "in the position of a defendant who had simply been accused of a crime.  [The defendant] had already entered a guilty plea to a Class C charge of trafficking in prison contraband."  *Id.* ¶ 11.  Thus, the defendant "had admitted guilt and accepted future punishment . . .." *Id.* ¶ 12.

The Maine Law Court observed that its decision to allow the admission of evidence of a defendant's violation of the deferred disposition agreement, even though it had been suppressed in the new criminal case, is consistent with its prior precedent of allowing the admission of a defendant's admission of guilt in a later proceeding even when the underlying charge is eventually dismissed.  *Id.* (citing *Gordon v. Cheskin*, 2013 ME 113, ¶ 19, 82 A.3d 1221; *State v. Foisy*, 384 A.2d 42, 44 (Me. 1978); *State v. Caron*, 334 A.2d 495, 499 & n.5 (Me. 1975)).  The *Hourdeh* Court based its conclusion in part on the proposition that "[d]eferred dispositions allow defendants in criminal matters to avoid some of the negative consequences of a criminal conviction. In exchange, however, defendants must openly acknowledge and take responsibility for their conduct."  *Id.* ¶ 11 (quoting *Gordon*, 2013 ME 113, ¶ 19).

11

In short, neither the statutory language of 17-A M.R.S. § 1903 nor the Maine Supreme Judicial Court's interpretation of that language supports Mr. Rydle's contention that his deferred dispositions were based on legislative policy reflecting his actual innocence, errors of law, or unconstitutionality as opposed to a fresh start. The Court concludes that none of Mr. Rydle's deferred dispositions qualifies as an expungement under U.S.S.G. § 4A1.2(j) as interpreted by the First Circuit.

## B. Diversionary Dispositions Under U.S.S.G. § 4A1.2(f)

Having concluded that none of the three deferred dispositions qualifies as an expungement, the Court turns to whether any qualify as diversionary dispositions within the meaning of U.S.S.G. § 4A1.2(f). The Court concludes that the same rationale underlying the conclusion that none of these deferred dispositions constitutes the basis for an expungement applies with equal force to the conclusion that they are all diversionary dispositions that count toward Mr. Rydle's criminal history score under U.S.S.G. § 4A1.2(f): namely, that to obtain a deferred disposition under Maine law, Mr. Rydle had to plead guilty to the crimes and his convictions were dismissed because he complied with the terms of the deferred dispositions, not because he was actually innocent of any of the crimes and not because the crimes were constitutionally or legally infirm.

In *United States v. Roberts*, 39 F.3d 10 (1st Cir. 1994), the First Circuit noted that where "an admission to sufficient facts occurs and is accepted at the second tier, [the First Circuit] think[s] that the defendant has in substance admitted to his guilt." *Id.* at 13. Once it is resolved that a defendant admitted guilt, the diversionary

12

disposition counts under U.S.S.G. § 4A1.2(f). *See United States v. Fraser*, 388 F.3d 371, 375 (1st Cir. 2004); *United States v. Nelson*, No. 2:16-cr-60-DBH, Civil No. 2:17-cv-387-DBH, 2018 U.S. Dist. LEXIS 130449, at *4 n.3 (D. Me. Aug. 3, 2018) ("It is well established that a diversionary disposition resulting from an admission of guilt is a 'sentence' that counts towards a defendant's criminal history score"). As the Court has discussed, Mr. Rydle's deferred dispositions under Maine law required an admission of guilt, and therefore the three deferred dispositions in the PSR count for purposes of his criminal history under U.S.S.G. § 4A1.2(f).

## VI.    SUMMARY

The Court concludes that the three deferred dispositions set forth in PSR paragraphs twenty-seven, twenty-eight, and twenty-nine are not expungements under U.S.S.G. § 4A1.2(j) and are diversionary dispositions resulting from a finding or admission of guilt under U.S.S.G. § 4A1.2(f).

## VII.   CONCLUSION

The Court ORDERS that the three criminal history points Danny Rydle disputes must be counted for purposes of calculating his criminal history and concludes that his criminal history category is Category III.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of July, 2020

13