UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-00073-JAW |
| | ) | |
| DANNY RYDLE | ) | |

**ORDER ON DEFENDANT'S OBJECTION TO UNSEALING
CERTAIN DOCKET ENTRIES**

The Court previously sealed a number of docket entries in this case because they mentioned a defendant's cooperation with the government. However, the sealing was to last only so long as the defendant remained incarcerated. Following release from incarceration, in accordance with its standard practice, the Court notified the defendant and the government that it would unseal the docket entries unless either party could justify continued sealing. The defendant objected and requested that the docket entries remain indefinitely sealed. The Court concludes that the presumption of public access to judicial records outweighs the defendant's request to indefinitely seal judicial records material to his criminal case that refer to his cooperation.

**I.   BACKGROUND**

On October 8, 2020, the Court sentenced Danny Rydle to time served plus seven days, three years of supervised release, and a $200 special assessment. *J.* at 2-3, 6-7 (ECF No. 71). The Court imposed this sentence after Mr. Rydle pleaded guilty to a two-count information, which charged him with one count of conspiracy to commit theft from a licensed firearm dealer in violation of 18 U.S.C. §§ 371, 922(u) and one

count of theft from a licensed firearm dealer and aiding and abetting in violation of 18 U.S.C. §§ 2, 922(u), 924(i). *Id.* at 1.

On October 21, 2020, the Court issued an order noting it previously sealed certain orders, conferences, and pleadings in Mr. Rydle's case. *Order* (ECF No. 73). Those docket entries were to remain sealed only until Mr. Rydle's release from incarceration. *Id.* In its October 21, 2020 order, the Court informed the Government and Mr. Rydle that it intended to unseal docket entries for ECF numbers 33, 36, 37, 38, 41, 42, 43, 44, 45, 46, and 50 unless either party filed an objection by November 4, 2020. *Id.*

On November 10, 2020, following an extension, Mr. Rydle objected to the unsealing. *Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 77) (*Def.'s Obj.*). On December 1, 2020, the Government responded in opposition. *Gov't's Resp. in Opp'n to Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 79) (*Gov't's Opp'n*). The Government and Mr. Rydle also filed sealed motions to seal their respective briefing on the sealing issue. *Mot. to Seal* (ECF No. 76); *Mot. to Seal* (ECF No. 78).

## II.   THE PARTIES' POSITIONS

### A.   Danny Rydle's Objection

In his November 10, 2020 objection, "Mr. Rydle asserts that unsealing the documents while his sentence remains incomplete places him in danger should he violate his supervised release and be sentenced to prison. This danger overcomes the public First Amendment right to access." *Def.'s Obj.* at 3. He cites recent caselaw from both the Ninth and Fourth Circuit for the proposition that a cooperating

defendant's safety trumps the public's qualified First Amendment right to access judicial records. *See id.* at 2-3 (quoting *United States v. Doe*, 870 F.3d 991, 997-98 (9th Cir. 2017) and *United States v. Doe*, 962 F.3d 139, 147 (4th Cir. 2020)). He therefore concludes that the Court should "indefinitely" seal "any filing that mentions his cooperation" because "protecting Mr. Rydle from the danger posed by his status as a cooperator is a compelling state interest," "disclosing his cooperation . . . harms the need to protect him from his status as cooperator should he be sentenced to prison," and "there is no alternative to sealing the documents that mention his cooperation that would adequately protect him from the danger of disclosure." *Id.* at 4.

### B.   The Government's Opposition

The Government opposes continued sealing, stating that "sealing of the . . . ECF entries would run wildly afoul of both this Court's standard practice as well as firmly established First Circuit precedent . . . ." *Gov't's Opp'n* at 1. In support, the Government cites *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013) and *United States v. Soto*, No. 2:17-cr-000157, *Order on Mot. to Seal* (ECF No. 140), which apply the First Circuit's approach to sealing of criminal docket entries. *Id.* at 2. The Government concludes by observing that the cases Mr. Rydle cites cannot "be reasonably read . . . to stand for the proposition that a defendant's anticipated violation of the terms of his supervised release and possible return to prison . . . constitute a compelling reason to justify non-disclosure of judicial documents to the public." *Id.* at 3.

3

## III.   DISCUSSION

"A public sentencing is not a private matter." *United States v. Kilmartin*, No. 1:14-cr-00129-JAW, 2018 U.S. Dist. LEXIS 59423, at *1 (D. Me. Apr. 6, 2018).  In balancing a defendant's desire to keep secret his cooperation with the government and the public's right to know the workings of the federal criminal justice system, the Court must weigh the need to protect cooperating defendants against the presumption of public access to criminal proceedings, especially sentencings, that the First Circuit discussed extensively in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013).

*Kravetz* explained that there are "two related but distinct presumptions of public access to judicial proceedings and records: a common law right of access to 'judicial documents,' and a First Amendment right of access to certain criminal proceedings and materials submitted therein." 706 F.3d at 52.  The common law right of access applies to "judicial records," which "are those materials on which a court relies in determining the litigants' substantive rights." *Id.* at 54 (internal quotation omitted).  Relevant here, "sentencing memoranda are judicial documents subject to the common law presumption of public access." *Id.* at 57.  Sentencing letters submitted by counsel and third parties to the Court are too. *Id.* at 59 ("Like the letters compiled and submitted by defendants' counsel, the letters submitted directly to the court on [the defendant's] behalf are presumptively accessible").

The public's common law right of access to judicial records is broad but not absolute. *See id.* ("Though the public's right of access is vibrant, it is not unfettered.

4

Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access") (internal citations omitted). Even so, the First Circuit cautioned that "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Id.* (quoting *In re Providence Journal Co., Inc.*, 293. F.3d 1, 10 (1st Cir. 2002)). And, "'[a] finding of good cause [to impound documents] must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987) (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)). Thus, without a particularized demonstration of harm to the defendant, the *Kravetz* Court refused to approve the sealing of sentencing letters, medical information, business information, and other documents that contained potentially sensitive personal information. *Kravetz*, 706 F.3d at 61-64.

Following *Kravetz*, the judges of this District have consistently concluded that while an investigation is ongoing or a cooperating defendant is incarcerated, the risk of obstructing the investigation and of violence to the defendant outweigh the common law presumption of public access to judicial documents. *See United States v. Commoss*, No. 2:18-CR-08-DBH, 2018 U.S. Dist. LEXIS 231120, at *2-3 (D. Me. June 19, 2018). Here, however, Mr. Rydle makes no claim that there is an ongoing investigation and he acknowledges he has been released from incarceration.

*Kravetz* did not specifically consider whether the risk of harm to a cooperating defendant is a compelling reason to seal evidence of the cooperation after the defendant is released from incarceration. However, Judge Hornby of this District

5

recently addressed this question in *Commoss*. There, Judge Hornby considered an argument similar to Mr. Rydle's: that the sealing of certain court documents related to a defendant's sentencing should persist while the defendant was on probation. *Id.* at *1. In rejecting this argument, Judge Hornby wrote:

> This District and others have granted motions to seal where materials demonstrate cooperation and might jeopardize an ongoing investigation or subject a cooperating defendant to violence in prison. But for a seal during probation (where the risks are different from those in prison), I conclude that something like an ongoing investigation or a particularized risk of violence is necessary to justify sealing documents. No such factor is demonstrated here.

*Id.* at *2.

The Court agrees with Judge Hornby's insightful analysis. When a criminal case is actively pending in court or while a defendant is incarcerated, a court can readily "articulate . . . their reasons" for sealing. *Kravetz*, 706 F.3d at 60 (quoting *In re Associated Press*, 162 F.3d 503, 510 (7th Cir. 1998)). As Judge Hornby wrote, the rationale for doing so is typically that the sealed materials "might jeopardize an ongoing investigation or subject a cooperating defendant to violence in prison." *Commoss*, 2018 U.S. Dist. LEXIS 231120, at *2. But once the investigation is over and the defendant is released from prison, a permanent sealing of documents related to the defendant's sentencing would prevent "public monitoring of the judicial system" in a criminal prosecution. *Kravetz*, 706 F.3d at 52 (quoting *In re Providence Journal Co.*, 293 F.3d at 9). Thus, like Judge Hornby, the Court concludes that "for a seal during probation . . . something like an ongoing investigation or a

6

particularized risk of violence is necessary to justify sealing documents." *Commoss*, 2018 U.S. Dist. LEXIS 231120, at *2-3.

Mr. Rydle provides no convincing justification for indefinite sealing. In his objection, Mr. Rydle requests that the Court seal certain documents relevant to his sentence during his term of supervised release "to protect him from his status as [a] cooperator should he be sentenced to prison." *Def.'s Obj.* at 4. This justification falls short of being "a particularized risk of violence." As Mr. Rydle concedes, he "does not face the immediate prospect of prison and may never have to [be] sentenced to prison . . .." *Id.* at 3. As such, the potential harm that Mr. Rydle identifies is speculative, not particularized. Furthermore, as the Government observes, accepting Mr. Rydle's argument would justify sealing "virtually every criminal case that comes before this Court" indefinitely because the defendant could always recidivate or violate the terms of his supervised release and return to jail. *Gov't's Opp'n* at 1.

Moreover, Mr. Rydle himself, not the Court nor the Government, holds the keys to the jailcell. In other words, it is Mr. Rydle who controls whether he will return to prison for violating the conditions of his supervised release. Thus, the painfully obvious answer to Mr. Rydle's posed dilemma is that he should not violate the conditions of his supervised release. If Mr. Rydle scrupulously obeys the conditions of supervised release, he will not return to prison. But, if he elects to violate the conditions of supervised release and returns to prison, he will have done so of his own volition with knowledge that his prior cooperation will be a matter of public record. Knowing that, if he still chooses to violate the terms of his supervised release, the

7

Court will go only so far in protecting Mr. Rydle from his own choices. Nor, it seems, should the Court enable Mr. Rydle's future violations by insulating him from their consequences.

In addition, to accept Mr. Rydle's argument, the Court would have to conclude it is likely he will violate the conditions of supervised release. On this point, the Court has more faith in Mr. Rydle than Mr. Rydle appears to have in himself. Here, the Court reasonably expects that he will not violate the conditions of his supervised release and return to prison. There is nothing unusual or onerous about the terms of supervised release that the Court imposed in Mr. Rydle's case. *See J.* at 3-4. For example, the Court required Mr. Rydle not to commit any new crimes, to report his whereabouts to the supervising officer, to tell the truth to the supervising officer, to go to work, not to possess a firearm or other dangerous weapon, and to follow the instructions of the supervising officer. *Id.* The Court recalls Mr. Rydle and has every confidence and expectation that he will not violate these sensible conditions. In another context, the Supreme Court has held that such an inference is too speculative to even satisfy Article III's standing requirement. *See O'Shea v. Littleton*, 414 U.S. 488, 497-98 (1974) (finding no standing to challenge the manner in which criminal statutes are enforced because "[w]e assume that respondents will conduct their activities within the law . . ."). Therefore, Mr. Rydle has not met his burden to overcome the common law presumption of access to the sentencing materials at issue.

The caselaw Mr. Rydle cites from the Ninth and Fourth Circuits is unavailing. To begin, *Kravetz* is the binding authority on sealing within the First Circuit, rather

than the Ninth and Fourth Circuit cases Mr. Rydle cites, which apply a different legal standard. Applying constitutional avoidance, *Kravetz* instructs district courts in the First Circuit to first analyze the common law standard for sealing and to only proceed to the First Amendment analysis if the common law right of access does not extend to the materials in question. *See Kravetz*, 706 F.3d at 53 (applying *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (1936) (Brandeis, J., concurring)). Neither the Fourth Circuit nor the Ninth Circuit employed this approach and instead used the First Amendment test. *See United States v. Doe*, 962 F.3d 139, 146 (4th Cir. 2020) (assuming without deciding that the First Amendment test applies); *United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017) (proceeding directly to the First Amendment analysis).

More importantly, the Fourth and Ninth Circuit cases are factually distinguishable. In the Ninth Circuit case, *United States v. Doe*, 870 F.3d at 995-96, a cooperating defendant appealed the sentencing judge's denial of several motions to seal docket entries describing his cooperation before his sentencing, not during his term of supervised release. That defendant identified, and the Government confirmed, "evidence in the record about [his] involvement with a wealthy, international cartel that threatened his family . . . and which lost roughly half a million dollars as the result of [his] arrest." *Id*. at 999. In fact, specifically, the Ninth Circuit quoted one member of the cartel as saying to Mr. Doe, "Don't play us dirty because we know where your family is." *Id*.

9

Mr. Rydle's request to seal is very different. It arises neither before nor during his incarceration, nor from an evidence-backed fear that well-funded, multi-national, organized and violent criminals will exact revenge upon him or his family. While such an extreme threat may not be necessary to impose a seal in every case, the Court concludes that here, the lack of any well-founded threat to Mr. Rydle undercuts his argument for an indefinite seal.

The 2020 Fourth Circuit case, *United States v. Doe*, 962 F.3d 139, is also distinguishable. There, a defendant serving a two hundred and fifty-two-month sentence for involvement in a cocaine conspiracy moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) in 2016. *Doe*, 962 F.3d at 142. When the district court denied the § 3582 motion in July 2018, it referenced the Government's U.S. Sentencing Guidelines § 5K1.1 motion made prior to his sentencing. *Id.* In November 2018, the defendant "became concerned about that reference, and . . . moved to seal the district court's order and remove its contents from online legal research services." *Id.* The district court denied the motion in December 2018, concluding that the risk of harm to the defendant was low because "the underlying order 'ha[d] been public since July 30, 2018.'" *Id.* at 143 (alteration in original).

It is true that the Fourth Circuit reversed the district court on the issue of sealing, but the obvious and significant factual difference between the Fourth Circuit case and Mr. Rydle's situation is that the defendant in *Doe* was still incarcerated and was likely to remain incarcerated for a substantial time. The district judges of this District routinely seal documents revealing cooperation while a defendant is

10

incarcerated just as they seal other non-cooperation documents that fall within the *Kravetz* exceptions to the right of public access. In fact, this Court did so in Mr. Rydle's case. The Fourth Circuit case simply does not reach the issue presented in this case: whether the seal should extend after a defendant is released from incarceration.

In sum, the Court rejects Mr. Rydle's reliance on the Ninth and Fourth Circuit cases. Though tangentially related, the cases are legally non-binding and factually distinguishable. Furthermore, the Court concludes that, under *Kravetz*, Mr. Rydle has not provided a "compelling reason[]" to justify a continued seal. *Kravetz*, 706 F.3d at 59. Mr. Rydle can best protect himself by assiduously complying with the conditions of his supervised release. The Court encourages him to do so and is confident that he will.

## IV. CONCLUSION

The Court DENIES the Danny Rydle's Objection to Unsealing Certain Docket Entries (ECF No. 77). The Court also DENIES Danny Rydle's Motion to Seal (ECF No. 76) and the Government's Motion to Seal (ECF No. 78). To allow Mr. Rydle to consider his legal position, the Court will afford him fourteen days from the date of this Order to file any further motions on this sealing issue. The Court ORDERS the Clerk of Court to seal this Order until January 4, 2021. If Mr. Rydle does not submit a motion by January 4, 2021, the Clerk of Court shall lift the seal on the following docket entries:

    1.    *Tr. of Proceedings, Presentence Conference* (ECF No. 33)

2.  *Min. Entry* (ECF No. 36)

3.  *Oral Mot. to Seal Continued Presentence Conf.* (ECF No. 37)

4.  *Order Granting Oral Mot. to Seal Continued Presentence Conference* (ECF No. 38)

5.  *Mot. to Seal* (ECF No. 41)

6.  *Gov't's Mem.* (ECF No. 42)

7.  *Order Granting Mot. to Seal Gov't's Mem.* (ECF No. 43)

8.  *Mot. to Seal* (ECF No. 44)

9.  *Def.'s Resp. to Gov't's Mot. to Seal* (ECF No. 45)

10. *Order Granting Mot. to Seal* (ECF No. 46)

11. *Order on Proffer Agreement* (ECF No. 50)

12. *Mot. to Seal* (ECF No. 76)

13. *Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 77)

14. *Mot. to Seal* (ECF No. 78)

15. *Gov't's Resp. in Opp'n to Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 79)

16. *Order on Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 80)

SO ORDERED.

                /s/ John A. Woodcock, Jr.
                JOHN A. WOODCOCK, JR.
                UNITED STATES DISTRICT JUDGE

Dated this 21st day of December, 2020