# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-00073-JAW |
| | ) | |
| DANNY RYDLE | ) | |

## ORDER ON REMAND

The Court previously sealed a number of docket entries in this case because they mentioned a defendant's cooperation with the government. However, the sealing was to last only so long as the defendant remained incarcerated. Following his release from incarceration, in accordance with its standard practice, the Court notified the defendant and the government that it would unseal the docket entries unless either party could justify continued sealing. The defendant objected and requested that the docket entries remain indefinitely sealed. On remand from the Court of Appeals for the First Circuit, the Court concludes that the presumption of public access to judicial records outweighs the defendant's request to indefinitely seal judicial records material to his criminal case that refer to his cooperation.

## I.    BACKGROUND

On October 8, 2020, the Court sentenced Danny Rydle to time served plus seven days, three years of supervised release, and a $200 special assessment. *J.* at 2-3, 6-7 (ECF No. 71). The Court imposed this sentence after Mr. Rydle pleaded guilty to a two-count information, which charged him with one count of conspiracy to commit theft from a licensed firearm dealer in violation of 18 U.S.C. §§ 371, 922(u) and one

count of theft from a licensed firearm dealer and aiding and abetting in violation of 18 U.S.C. §§ 2, 922(u), 924(i).  *Id.* at 1.

On October 21, 2020, the Court issued an order noting it previously sealed certain orders, conferences, and pleadings in Mr. Rydle's case.  *Order* (ECF No. 73). Those docket entries were to remain sealed only until Mr. Rydle's release from incarceration.  *Id.*  In its October 21, 2020 order, the Court informed the Government and Mr. Rydle that it intended to unseal docket entries for ECF numbers 33, 36, 37, 38, 41, 42, 43, 44, 45, 46, and 50 unless either party filed an objection by November 4, 2020.  *Id.*

On November 10, 2020, following an extension, Mr. Rydle objected to the unsealing.  *Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 77) (*Def.'s Obj.*). On December 1, 2020, the Government responded in opposition.  *Gov't's Resp. in Opp'n to Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 79) (*Gov't's Opp'n*). The Government and Mr. Rydle also filed sealed motions to seal their respective briefing on the sealing issue.  *Mot. to Seal* (ECF No. 76); *Mot. to Seal* (ECF No. 78). On December 21, 2020, the Court issued an order overruling Mr. Rydle's objection to unsealing.  *Order on Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 80) (*Sealing Order*).  On January 4, 2021, Mr. Rydle appealed that order.  *Notice of Appeal* (ECF No. 81).

While the matter was on appeal, on October 18, 2021, the Government initiated a petition to revoke Mr. Rydle's supervised release for continued drug use and failure to attend counseling sessions.  *Pet. for Warrant or Summons for Offender under*

*Supervision* (ECF No. 102).  On December 10, 2021, Mr. Rydle appeared before the Court and admitted the alleged violations.  *Min. Entry* (ECF No. 117).  The Court imposed a three-month term of incarceration with twenty-four months of supervised release to follow.  *Revocation J.* at 2-3 (ECF No. 118).

On December 29, 2021, the First Circuit issued an order, noting that Mr. Rydle had returned to incarceration, staying the appeal for sixty days, and remanding the case to this Court to "clarify, by an indicative ruling, the effect, if any, of these developments on its earlier decision to unseal the documents."  *Ct. of Appeals for the First Circuit, Order of Ct.* at 1 (ECF No. 120).  On January 5, 2022, the Court issued an indicative ruling, altering its earlier unsealing order and ordering the sealed docket entries to remain sealed pending further order of the Court.  *Indicative Order on Remand* (ECF No. 121) (*Indicative Order*).  On January 18, 2022, the First Circuit issued a further order, remanding this matter "to the district court for further proceedings in accordance with its January 5, 2022 indicative ruling."  *Ct. of Appeals for the First Circuit, Order of Ct.* at 1 (ECF No. 122).

On January 28, 2022, the Court issued a further order, noting that Mr. Rydle had been released from incarceration and asking whether the parties wished to rest on their prior filings on the sealing issue or to supplement them.  *Order* (ECF No. 123).  If the parties wished to supplement their current filings, the Court ordered them to do so by February 4, 2022.  *Id.*  On February 8, 2022, Mr. Rydle filed a position letter, further objecting to unsealing.  *Letter from Att'y Robert C. Andrews to Hon.*

*John A. Woodcock, Jr.* (Feb. 8, 2022) (ECF No. 127) (*Andrews Letter*).[1]  On February 9, 2022, the Government responded to Attorney Andrews' position letter.  *Gov't's Resp. to Def.'s Suppl. Letter Filing* (ECF No. 130) (*Gov't's Suppl. Resp.*).

The Court has reiterated its earlier order, *see Sealing Order*, except it has updated the facts as necessary to reflect events subsequent to December 21, 2020, the date of its original order, and it has addressed the additional issues Attorney Andrews has raised in his response.

## II.   THE PARTIES' POSITIONS

### A.   Danny Rydle's Objection

In his November 10, 2020 objection, "Mr. Rydle asserts that unsealing the documents while his sentence remains incomplete places him in danger should he violate his supervised release and be sentenced to prison.  This danger overcomes the public First Amendment right to access." *Def.'s Obj.* at 3.  He cites recent caselaw from both the Ninth and Fourth Circuit for the proposition that a cooperating defendant's safety trumps the public's qualified First Amendment right to access judicial records.  *See id.* at 2-3 (quoting *United States v. Doe*, 870 F.3d 991, 997-98 (9th Cir. 2017) and *United States v. Doe*, 962 F.3d 139, 147 (4th Cir. 2020)).  He therefore concludes that the Court should "indefinitely" seal "any filing that mentions his cooperation" because "protecting Mr. Rydle from the danger posed by his status

---

[1]      Attorney Andrews correctly surmised that the Court was less than pleased when he ignored the court-imposed deadline of February 4, 2022 for filing a supplemental memorandum, responded to an inquiry from the Clerk's Office by leaving a voicemail message on February 7, 2022 to the effect that because of the weather and feeling ill, he had forgotten to respond and would file something that day, and then failed to meet his own deadline.  If Attorney Andrews had filed a motion to extend the time for his filing, the Court would have granted it.  But the court system cannot operate efficiently if lawyers treat court-ordered deadlines as mere suggestions.

as a cooperator is a compelling state interest," "disclosing his cooperation . . . harms the need to protect him from his status as cooperator should he be sentenced to prison," and "there is no alternative to sealing the documents that mention his cooperation that would adequately protect him from the danger of disclosure." *Id.* at 4.

### B.    The Government's Opposition

The Government opposes continued sealing, stating that "sealing of the . . . ECF entries would run wildly afoul of both this Court's standard practice as well as firmly established First Circuit precedent . . . ." *Gov't's Opp'n* at 1.  In support, the Government cites *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013) and *United States v. Soto*, No. 2:17-cr-000157, *Order on Mot. to Seal* (ECF No. 140), which apply the First Circuit's approach to sealing of criminal docket entries.  *Id.* at 2.  The Government concludes by observing that the cases Mr. Rydle cites cannot "be reasonably read . . . to stand for the proposition that a defendant's anticipated violation of the terms of his supervised release and possible return to prison . . . constitute a compelling reason to justify non-disclosure of judicial documents to the public." *Id.* at 3.

### C.    Danny Rydle's Supplemental Position Letter

In his position letter, Attorney Andrews criticized the Court's language in its December 21, 2020 unsealing order as failing to appreciate Mr. Rydle's struggle with addiction and, in Attorney Andrews' view, that "the context here is the risk that his addiction will require continued periods of incarceration." *Andrews Letter* at 3.  In

its ruling on the motion for permanent sealing, Attorney Andrews urges the Court to consider the views of former United States District Judge Mark W. Bennett in *United States v. Hendrickson*, 25 F. Supp. 3d 1166, 1174 (N.D. Iowa 2014).

### D.     The Government's Supplemental Response

In its February 9, 2022 supplemental response, the Government acknowledges the "tragic reality that the scourge of addiction runs rampant in many parts of our communities." *Gov't's Suppl. Resp.* at 1.   Even if Mr. Rydle is an addict, the Government notes that this "does not distinguish him from many defendants that appear before this Court." *Id.*  Furthermore, the Government argues that the "fact of any addiction and potential relapse is simply insufficient to make out a specific articulable threat to his safety in the event that any cooperation-based materials were to be unsealed." *Id.*

## III.   DISCUSSION

### A.     *Kravetz* and the Right of Public Access

"A public sentencing is not a private matter." *United States v. Kilmartin*, No. 1:14-cr-00129-JAW, 2018 U.S. Dist. LEXIS 59423, at *1 (D. Me. Apr. 6, 2018).   In balancing a defendant's desire to keep secret his cooperation with the government and the public's right to know the workings of the federal criminal justice system, the Court must weigh the need to protect cooperating defendants against the presumption of public access to criminal proceedings, especially sentencings, that the First Circuit discussed extensively in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013).

*Kravetz* explained that there are "two related but distinct presumptions of public access to judicial proceedings and records: a common law right of access to 'judicial documents,' and a First Amendment right of access to certain criminal proceedings and materials submitted therein." 706 F.3d at 52. The common law right of access applies to "judicial records," which "are those materials on which a court relies in determining the litigants' substantive rights." *Id.* at 54 (internal quotation omitted). Relevant here, "sentencing memoranda are judicial documents subject to the common law presumption of public access." *Id.* at 57. Sentencing letters submitted by counsel and third parties to the Court are too. *Id.* at 59 ("Like the letters compiled and submitted by defendants' counsel, the letters submitted directly to the court on [the defendant's] behalf are presumptively accessible").

The public's common law right of access to judicial records is broad but not absolute. *See id.* ("Though the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access") (internal citations omitted). Even so, the First Circuit cautioned that "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Id.* (quoting *In re Providence Journal Co., Inc.*, 293. F.3d 1, 10 (1st Cir. 2002)). And, "'[a] finding of good cause [to impound documents] must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987) (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)). Thus, without a particularized demonstration of

7

harm to the defendant, the *Kravetz* Court refused to approve the sealing of sentencing letters, medical information, business information, and other documents that contained potentially sensitive personal information. *Kravetz*, 706 F.3d at 61-64.

## B. Application of *Kravetz* to Access to Criminal Proceedings Where the Defendant Cooperates with the Government

Following *Kravetz*, the judges of this District have consistently concluded that while an investigation is ongoing or a cooperating defendant is incarcerated, the risk of obstructing the investigation and of violence to the defendant outweighs the common law presumption of public access to judicial documents. *See United States v. Commoss*, No. 2:18-CR-08-DBH, 2018 U.S. Dist. LEXIS 231120, at *2-3 (D. Me. June 19, 2018). Here, however, Mr. Rydle makes no claim that there is an ongoing investigation and the Court is aware that he has now been released from incarceration.

*Kravetz* did not specifically consider whether the risk of harm to a cooperating defendant is a compelling reason to seal evidence of the cooperation after the defendant is released from incarceration. However, Judge Hornby of this District addressed this question in *Commoss*. There, Judge Hornby considered an argument similar to Mr. Rydle's: that the sealing of certain court documents related to a defendant's sentencing should persist while the defendant was on probation. *Id.* at *1. In rejecting this argument, Judge Hornby wrote:

> This District and others have granted motions to seal where materials demonstrate cooperation and might jeopardize an ongoing investigation or subject a cooperating defendant to violence in prison. But for a seal during probation (where the risks are different from those in prison), I conclude that something like an ongoing investigation or a

particularized risk of violence is necessary to justify sealing documents.
No such factor is demonstrated here.

*Id.* at *2.

### C.    The Right of Public Access and Danny Rydle

The Court agrees with Judge Hornby's insightful analysis.  When a criminal case is actively pending in court or while a defendant is incarcerated, a court can readily "articulate . . . their reasons" for sealing.  *Kravetz*, 706 F.3d at 60 (quoting *In re Associated Press*, 162 F.3d 503, 510 (7th Cir. 1998)).  As Judge Hornby wrote, the rationale for doing so is typically that the sealed materials "might jeopardize an ongoing investigation or subject a cooperating defendant to violence in prison." *Commoss*, 2018 U.S. Dist. LEXIS 231120, at *2.  But once the investigation is over and the defendant is released from prison, a permanent sealing of documents related to the defendant's sentencing would prevent "public monitoring of the judicial system" in a criminal prosecution.  *Kravetz*, 706 F.3d at 52 (quoting *In re Providence Journal Co.*, 293 F.3d at 9).  Thus, like Judge Hornby, the Court concludes that "for a seal during probation . . . something like an ongoing investigation or a particularized risk of violence is necessary to justify sealing documents." *Commoss*, 2018 U.S. Dist. LEXIS 231120, at *2-3.

Mr. Rydle provides no convincing justification for indefinite sealing.  In his objection, Mr. Rydle requests that the Court seal certain documents relevant to his sentence during his term of supervised release "to protect him from his status as [a] cooperator should he be sentenced to prison."  *Def.'s Obj.* at 4.  This justification falls short of being "a particularized risk of violence."   Although Mr. Rydle originally

conceded that he "does not face the immediate prospect of prison and may never have to [be] sentenced to prison . . .," *id.* at 3, it turned out that he was subject to a new term of incarceration based on his violation of the terms of his supervised release and the Court maintained the seal during his most recent period of incarceration. *Indicative Order* at 4.

### D.    Addiction and Danny Rydle

The Court rejects the defense's suggestion that its rulings in this case have been insensitive to Mr. Rydle's struggles with addiction.  At his 2019 sentencing hearing, Mr. Rydle faced a guideline sentence range of 37 to 46 months, which was reduced to 30 to 37 months, based on the Government's agreement to recommend a three-level COVID variance.  According to the Court's notes, at the sentencing hearing the Court accepted defense counsel's recommendation that it impose a time served plus seven-day sentence in part because of Mr. Rydle's struggles with addiction.

Mr. Rydle was released from incarceration under his original sentence on October 15, 2020.  *See Pet. for Warrant or Summons for Offender under Supervision* at 1 (ECF No. 102).  About one year later, on October 18, 2021, the Government filed its petition to revoke Mr. Rydle's supervised release based on multiple positive drug test results, his initial failure to report to a residential drug treatment program, and his subsequent discharge from the program after he was eventually admitted, because while a resident he used buprenorphine without a valid prescription.  *Id.* at 1-2.  On December 10, 2021, after Mr. Rydle admitted his violation, the Court

sentenced him to three months of incarceration and twenty-four months of supervised release. *Revocation J.* at 2. As Mr. Rydle had already served two months of incarceration, the Court's sentence imposed only one additional month of jailtime.

At the revocation hearing, after Mr. Rydle acknowledged that he "messed up," the Court's notes indicate that it encouraged Mr. Rydle to continue his efforts at drug rehabilitation. The Court also fashioned its sentence so that after his discharge from incarceration, Mr. Rydle would remain in community confinement for 120 days and after his period of community confinement, the Court ordered that he reside in a sober living facility for a period of six months, all in an effort to encourage a smooth transition from jail back into the community. *Id.* at 5.

To this end, the Court notes that Judge Bennett also wrote in *Hendrickson*:

> This is not to say, however, that addiction is *limitlessly* mitigating. For example, addiction may not be mitigating, or may be less mitigating, where there is no nexus between the defendant's addiction and offense; or where the defendant has had numerous opportunities for treatment and has either declined drug treatment or failed to meaningfully attempt to complete drug treatment. Also, there may be some point at which a defendant no longer gets the "benefit" of addiction-based mitigation—like the defendant who, after sentencing, repeatedly violates his or her terms of supervised release by using drugs or alcohol. Addiction could even be aggravating in certain situations. Each case must be carefully considered on its own and all of the § 3553(a) factors must be balanced.

25 F. Supp. 3d at 1174-75 (emphasis in original).

Although Attorney Andrews is critical of the Court's statement that "the Court has more faith in Mr. Rydle than Mr. Rydle appears to have in himself," Attorney Andrews lifts that phrase out of context. The Court wrote that sentence solely in the context of whether Mr. Rydle would violate the conditions of supervised release before

it became aware that he had done so.  The sentence was not intended to criticize Mr. Rydle, but to encourage him by signaling that, even if Mr. Rydle had doubts about himself, the Court had faith in him.

### E.     Addiction and the Right of Public Access

To pull this issue back into the matter before the Court, whether an otherwise public proceeding should be sealed, the defense's argument is that because Mr. Rydle is an addict and likely to recidivate, the Court should indefinitely seal evidence of his cooperation.   The Court remains unconvinced that, absent some evidence of particularized harm, it should seal evidence of cooperation because Mr. Rydle or another defendant has problems with addiction.

If the argument is that the likelihood of recidivism alone should require indefinite sealing, the most likely recidivists, according to the United States Sentencing Commission, are not drug traffickers, but violent offenders and firearms offenders.  Just today, the United States Sentencing Commission released the results of an intensive study that concluded that the highest recidivism rate among federal offenders is among violent offenders as opposed to non-violent offenders.   U.S. SENTENCING COMM'N, RECIDIVISM OF FED. VIOLENT OFFENDERS RELEASED IN 2010 at 5 (Feb. 10, 2022) ("Violent offenders recidivated at a higher rate than non-violent offenders.  Over an eight-year follow-up period, nearly two-thirds (63.8%) of violent offenders released in 2010 were rearrested, compared to more than one-third (38.4%) of non-violent offenders").  By contrast, according to the Sentencing Commission, drug trafficking offenders, who presumably have a high prevalence of addiction, were

12

rearrested at a lower rate than violent offenders.   U.S. SENTENCING COMM'N, RECIDIVISM OF FED. DRUG TRAFFICKING OFFENDERS RELEASED IN 2010 at 5 (Jan. 12, 2022) ("The rearrest rate for a new offense or an alleged violation of supervision conditions was similar for drug trafficking offenders (47.9%) as compared to all other offenders released in 2010 (50.4%)").   Indeed, the highest correlation between offense and recidivism is attributed to the type of offenses of which Mr. Rydle was convicted, firearms offenses.   U.S. SENTENCING COMM'N, RECIDIVISM OF FED. FIREARMS OFFENDERS RELEASED IN 2010 at 6 (Updated Feb. 9, 2022) ("Firearms offenders recidivated at a higher rate than all other offenders.   Over two-thirds (69.0%) of firearms offenders were rearrested for a new crime during the eight-year follow-up period compared to less than half of all other offenders (45.1%)").   To accept the argument that the public should not have access to the full record of a public sentencing because the offender is likely to recidivate subordinates the public right of access to criminal proceedings in favor of defendants who recidivate.

### F.   Addiction, Supervised Release, and Petitions for Revocation

Nor is it this Court's experience that the Probation Office routinely violates supervisees who suffer from addiction and who fail drug screening tests.   Instead, the Probation Office works with supervisees and steers them to outpatient treatment, and occasionally residential treatment, before it resorts to petitions for revocation. Typically, it is where the supervisee has demonstrated an unwillingness to accept treatment that the Probation Office files a petition for revocation in an effort to bring home to the supervisee the critical need for cooperation.

This is exactly what happened in Mr. Rydle's case. After repeated positive drug tests, the Probation Officer sought out and obtained a twenty-eight-day residential treatment program for Mr. Rydle and Mr. Rydle confirmed that he had a ride to the St. Francis Recovery Center (SFRC) in Lewiston. *Revocation Report* at 6 (ECF No. 110). But on September 30, 2021, he failed to show up at his scheduled admission date, informing his Probation Officer that he ended up not having a ride. *Id.* When Mr. Rydle confirmed another admission date of October 7, 2021, the Probation Officer secured an Uber to transport him from Biddeford to Lewiston. *Id.*

The SFRC previously informed Mr. Rydle that it was going to require a negative COVID test for admission and that he would have to bring the test results with him to the program. *Id.* However, when Mr. Rydle appeared for admission to the SFRC, he had forgotten his COVID test results. *Id.* at 6-7. Nor was his doctor able to confirm the negative results. *Id.* at 7. The Probation Office was able, however, to have a Supervisory Officer, who happened to be in Lewiston, conduct a COVID test for Mr. Rydle and thereby gain his admission to the SFRC. *Id.* The Probation Office's unusual efforts in Mr. Rydle's case to secure residential treatment for him is more typical of the efforts the Probation Office in this District undergoes to obtain necessary drug treatment for addicts.

In fact, the Probation Office did not seek to revoke Mr. Rydle's supervised release until the residential treatment provider terminated him from the program because he was "purchasing/obtaining buprenorphine from another resident, which is prohibited." *Id.* To claim, as Attorney Andrews does, that Mr. Rydle is doomed to

a cycle of drug abuse, violation, and reincarceration is not only contrary to this Court's experience, it also deprives Mr. Rydle and other addicts of their own agency and views them as hopeless, something this Court is unwilling to do for Mr. Rydle and others.

### G. Reincarceration, Danny Rydle, and Public Access

The Court acknowledges that with Mr. Rydle's recent incarceration and release, the facts have shifted somewhat, but the Court's ruling on the sealing issue is unchanged. By his violation of the terms of supervised release, Mr. Rydle has demonstrated that he is more at risk of reoffending than the Court hoped in its December 21, 2020 order. *Sealing Order* at 8. Furthermore, consistent with the defense position, the Court views Mr. Rydle's violation as not uncommon for persons suffering from addiction and the Court is sympathetic to his efforts to remain clean and sober. Nevertheless, as time goes on, the risks of cooperation fade because any reincarceration necessarily will be even further removed from Mr. Rydle's active cooperation.

Moreover, it continues to be true that Mr. Rydle himself, not the Court, not the Probation Office, and not the Government, holds the keys to the jailcell. In other words, it is Mr. Rydle who controls whether he will return to prison for violating the conditions of his supervised release. If Mr. Rydle scrupulously obeys the conditions of supervised release or if he even demonstrates a sincere and sustained desire to accept treatment, the Court is not convinced that he will return to prison. But, if he elects to violate the conditions of supervised release in a manner that causes the Probation Office to file another revocation petition and if he returns to prison, he will

have done so of his own volition with knowledge that his prior cooperation will be a matter of public record. The Court will go only so far in protecting Mr. Rydle from his own choices. Nor, it seems, should the Court enable Mr. Rydle's future violations by insulating him from their consequences.

Finally, it remains true that the potential harm Mr. Rydle identifies is speculative, not particularized. If Mr. Rydle were able to present evidence that he faced an enhanced risk of retribution due to the circumstances of his case, the nature of his cooperation, direct or indirect threats against him or his family, or the violent character of the individuals against whom he cooperated, this case would be different. However, Mr. Rydle has made no such argument and the record contains no such evidence. Accordingly, as the Government observes, accepting Mr. Rydle's argument would justify sealing "virtually every criminal case that comes before this Court" indefinitely because the defendant could always recidivate or violate the terms of his supervised release and return to jail. *Gov't's Opp'n* at 1. Therefore, Mr. Rydle has not met his burden to overcome the common law presumption of access to the sentencing materials at issue.

### H.    Caselaw from Other Circuits

The caselaw Mr. Rydle cites from the Ninth and Fourth Circuits is unavailing. To begin, *Kravetz* is the binding authority on sealing within the First Circuit, rather than the Ninth and Fourth Circuit cases Mr. Rydle cites, which apply a different legal standard. Applying constitutional avoidance, *Kravetz* instructs district courts in the First Circuit to first analyze the common law standard for sealing and to only proceed

to the First Amendment analysis if the common law right of access does not extend to the materials in question. *See Kravetz*, 706 F.3d at 53 (applying *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (1936) (Brandeis, J., concurring)). Neither the Fourth Circuit nor the Ninth Circuit employed this approach and instead used the First Amendment test. *See United States v. Doe*, 962 F.3d 139, 146 (4th Cir. 2020) (assuming without deciding that the First Amendment test applies); *United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017) (proceeding directly to the First Amendment analysis).

More importantly, the Fourth and Ninth Circuit cases are factually distinguishable. In the Fourth Circuit case, *United States v. Doe*, the defendant seeking sealing was still an inmate in federal prison. 962 F.3d at 142. As discussed above, the district judges of this District routinely seal documents revealing cooperation while a defendant is incarcerated just as they seal other non-cooperation documents that fall within the *Kravetz* exceptions to the right of public access. In fact, this Court has done so in Mr. Rydle's case. The Fourth Circuit case simply does not reach the issue presented in this case: whether the seal should extend after a defendant is released from incarceration.

Furthermore, the Fourth Circuit observed that the defendant in that case "was involved with, and provided information about, members of an interstate drug-trafficking organization and individuals committing home invasion robberies." *Id.* at 148. The Fourth Circuit explained that "[t]he information he provided was used in multiple investigations, as well as in a federal sentencing. And Defendant spent a

17

decade '[r]obbing high level drug dealers' – individuals who, according to the district court, are more likely to 'put a hit out on you' than to 'call the police' after a robbery." *Id.*

Moreover, the Fourth Circuit case is also distinguishable on other grounds. There, a defendant serving a two hundred and fifty-two-month sentence for involvement in a cocaine conspiracy moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) in 2016. *Id.* at 142. When the district court denied the § 3582 motion in July 2018, it referenced the Government's U.S. Sentencing Guidelines § 5K1.1 motion made prior to his sentencing. *Id.* In November 2018, the defendant "became concerned about that reference, and . . . moved to seal the district court's order and to remove its contents from online legal research services." *Id.* The district court denied the motion in December 2018, concluding that the risk of harm to the defendant was low because "the underlying order 'ha[d] been public since July 30, 2018.'" *Id.* at 143 (alteration in original).

In the Ninth Circuit case, *United States v. Doe*, 870 F.3d at 995-96, a cooperating defendant appealed the sentencing judge's denial of several motions to seal docket entries describing his cooperation before his sentencing, not during his term of supervised release. That defendant identified, and the Government confirmed, "evidence in the record about [his] involvement with a wealthy, international cartel that threatened his family . . . and which lost roughly half a million dollars as the result of [his] arrest." *Id.* at 999. In fact, specifically, the Ninth

18

Circuit quoted one member of the cartel as saying to the defendant, "Don't play us dirty because we know where your family is." *Id.*

Mr. Rydle's request to seal is very different. It arises neither before nor during his incarceration, nor from an evidence-backed fear that anyone, much less the potentially dangerous characters in the Fourth and Ninth Circuit cases, are aware of his cooperation or are out to get him. The Court concludes that here, the lack of any well-founded threat to Mr. Rydle undercuts his argument for an indefinite seal.

### I.      Summary

In sum, the Court rejects Mr. Rydle's reliance on the Ninth and Fourth Circuit cases. Though tangentially related, the cases are legally non-binding and factually distinguishable. Furthermore, the Court concludes that, under *Kravetz*, Mr. Rydle has not provided a "compelling reason[]" to justify a continued seal. *Kravetz*, 706 F.3d at 59. It remains true that Mr. Rydle can best protect himself by assiduously complying with the conditions of his supervised release or at least by making a good faith effort to do so. The Court encourages him to do so and remains guardedly confident that he will. In these circumstances, the Court concludes that Mr. Rydle has not overcome the presumptive right of public access and orders unsealed the sealed docket entries in this case.

### IV.   CONCLUSION

Upon remand for indicative order from the Court of Appeals for the First Circuit, the Court DENIES Danny Rydle's Objection to Unsealing Certain Docket Entries (ECF No. 77). The Court also DENIES Danny Rydle's Motion to Seal (ECF

No. 76) and the Government's Motion to Seal (ECF No. 78).   As Mr. Rydle has appealed the Court's earlier December 21, 2020 Order on Sealing, the Court ORDERS the Clerk of Court to seal this Order and the following docket entries pending further order of the Court of Appeals for the First Circuit.

1.   *Tr. of Proceedings, Presentence Conference* (ECF No. 33)

2.   *Min. Entry* (ECF No. 36)

3.   *Oral Mot. to Seal Continued Presentence Conference* (ECF No. 37)

4.   *Order Granting Oral Mot. to Seal Continued Presentence Conference* (ECF No. 38)

5.   *Mot. to Seal* (ECF No. 41)

6.   *Gov't Mem.* (ECF No. 42)

7.   *Order Granting Mot. to Seal Gov't Mem.* (ECF No. 43)

8.   *Mot. to Seal* (ECF No. 44)

9.   *Def.'s Resp. to Gov't Mot. to Seal* (ECF No. 45)

10.   *Order Granting Mot. to Seal* (ECF No. 46)

11.   *Order on Proffer Agreement* (ECF No. 50)

12.   *Mot. to Seal* (ECF No. 76)

13.   *Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 77)

14.   *Mot. to Seal* (ECF No. 78)

15.   *Gov't Resp. in Opp'n to Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 79)

16.   *Order on Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 80)

17.   *Mot. to Seal Mot. to Stay* (ECF No. 88)

18.  *Mot. to Stay Ct. Order Unsealing Various Docs. on the Docket Pending Appeal* (ECF No. 89)

19.  *Mot. to Seal Mot. to Extend Time* (ECF No. 90)

20.  *Unopposed Mot. to Extend Time* (ECF No. 91)

21.  *Order Granting Mot. to Seal Mot. to Extend Time* and *Granting Sealed Mot. to Extend Time* (ECF No. 92)

22.  *Sealed Suppl. Certificate and Docket Sheet* (ECF No. 93)

23.  *Mot. to Seal Resp.* (ECF No. 94)

24.  *Sealed Resp. to Mot. re Sealed Mot. to Stay Ct. Order Unsealing Various Docs. on the Docket Pending Appeal* (ECF No. 95)

25.  *Sealed Clerk's Fourth Suppl. Certificate as to Danny Rydle* (ECF No. 96)

26.  *Sealed Suppl. Certificate and Docket Sheet Transmitted Electronically to the USCA as to Danny Rydle re Notice of Appeal* (ECF No. 97)

27.  *Order Granting Mot. to Seal Resp.* (ECF No. 98)

28.  *Order on Mot. to Stay the Ct. Order Unsealing Various Docs. on the Docket Pending Appeal* (ECF No. 99)

29.  *Sealed Clerk's Fifth Suppl. Certificate as to Danny Rydle* (ECF No. 100)

30.  *Sealed Suppl. Certificate and Docket Sheet Transmitted Electronically to the USCA as to Danny Rydle re Notice of Appeal* (ECF No. 101)

31.  *Order of Ct., Ct. of Appeals for the First Circuit* (ECF No. 120)

32.  *Indicative Order on Remand* (ECF No. 121)

33.  *Order of Ct., Ct. of Appeals for the First Circuit* (ECF No. 122)

34.  *Clerk's First Suppl. Certificate as to Danny Rydle re Notice of Appeal* (ECF No. 124)

35.  *Mot. to Seal Letter* (ECF No. 126)

36.  *Letter from Att'y Robert C. Andrews to Hon. John A. Woodcock, Jr.* (Feb. 8, 2022) (ECF No. 127)

37.  *Order Granting Mot. to Seal Letter* (ECF No. 128)

38.  *Mot. to Seal Gov't's Resp.* (ECF No. 129)

39.  *Gov't's Resp. to Def.'s Suppl. Letter Filing* (ECF No. 130)

40.  *Order Granting Gov't's Mot. to Seal* (ECF No. 131)

41.  *Sealed Suppl. Certificate and Docket Sheet Transmitted Electronically to the USCA as to Danny Rydle re Notice of Appeal* (ECF No. 133)

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of February, 2022